**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH MICHAEL DEVON ENGEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-cv-01893-DDN |
| | ) | |
| JEFFERSON COUNTY SHERIFF'S | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the Court on the motion of plaintiff Joseph Michael Devon Engel for leave to commence this civil action without prepayment of the required filing fee.[1] Based on the financial information provided by plaintiff, the motion will be granted, and the Court will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly

---

[1] Plaintiff has not submitted a separate motion for leave to proceed in forma pauperis, nor has he paid the filing fee. However, in the body of his complaint, plaintiff states: "Application to proceed in District Courts without prepaying fees or cost[s]. I am [at] ERDCC [and] I only get $5.00 dollars a month." (Docket No. 1 at 2). The Court has construed this as a motion for leave to commence this civil action without prepayment of the required filing fee.

payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

Plaintiff has not submitted a prison account statement as required by 28 U.S.C. § 1915(a)(2), claiming that he cannot get any more copies. (Docket No. 1 at 2). Nevertheless, having reviewed the information provided by plaintiff, the Court will require him to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (explaining that when a prisoner is unable to provide the Court with a copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances"). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820

F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Missouri Eastern Correctional Center in Pacific, Missouri. At the time relevant to this complaint, however, he was an inmate at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre,

3

Missouri.[2] Since September 9, 2020, he has filed over 130 cases in the United States District Court for the Eastern District of Missouri.

Plaintiff brings this civil action pursuant to 42 U.S.C. § 1983, naming the Jefferson County Sheriff's Department, the Jefferson County Jail Administrator, and the Jefferson County Sheriff as defendants. The Jail Administrator is sued in both an official and individual capacity, while the Sheriff is sued in an official capacity only. (Docket No. 1 at 1).

As to his "Statement of Claim," plaintiff asserts that his complaint is "in regards to overall issues." First, he states that "most religion" on television is "uncalled for and just general Christian." Next, plaintiff states "religious diets," without providing any further explanation. Third, he claims that inmates are supposed to have "3 hot meals," but that he is a "veggie and all they give [him] is beans." However, he states that he cannot "do" beans because of his digestive system. After that, plaintiff contends that there are supposed to be "services for every religion…and Bibles and stuff." He next states that "medical cost is on the jail" and that it is "not right." Likewise, plaintiff states that it is not right that there is not "full time medical staff" at the jail.

With regard to conditions in the jail, plaintiff contends that inmates are stacked like "fish in a freezer." Further, he alleges it is not right that there are no sheets or pillows. As to the temperature in the jail, plaintiff states that it is "freezing all the time," which "is not right." Finally, plaintiff asserts that the way the laundry is washed "is not right and inhuman."

---

[2] In his handwritten complaint, plaintiff appears to indicate that he is a "civilly committed detainee." (Docket No. 1 at 1). However, plaintiff has also provided his prison registration number, and has acknowledged being held at the ERDCC, a state correctional facility. Moreover, review of the Missouri Department of Correction's online records show that plaintiff is a convicted state prisoner serving a ten-year sentence for, among other things, second-degree burglary. Therefore, the Court has determined that plaintiff is actually a convicted and sentenced state prisoner, and not a civilly committed detainee, for purposes of 28 U.S.C. § 1915 review.

Due to these complaints, plaintiff states that he has suffered unspecified mental and physical injuries. (Docket No. 1 at 2). He seeks $1,850 billion in damages, as well as "tablets[,] e-cigs [and] chew in county jail."

### Discussion

Plaintiff is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983, naming the Jefferson County Sheriff's Department, Jail Administrator, and Sheriff as defendants. Because plaintiff is proceeding in forma pauperis, the Court has reviewed his complaint pursuant to 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, this action must be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B).

### A. Jefferson County Sheriff's Department

Plaintiff has named the Jefferson County Sheriff's Department as a defendant. The Jefferson County Sheriff's Department, however, is a department of local government, and not a distinctly suable entity. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). As it is not suable, plaintiff's claim against the Jefferson County Sheriff's Department must be dismissed.

Even if Jefferson County was substituted as the proper party defendant, the claim would still be subject to dismissal. A local governing body such as Jefferson County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690

(1978). However, the county cannot be held liable merely because it employs a tortfeasor. *See A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality…cannot be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of Jefferson County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

6

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has not alleged facts supporting the proposition that his constitutional rights were violated due to an unconstitutional policy, custom, or failure to train on the part of Jefferson County.

With regard to policy, plaintiff's facts point to no Jefferson County "policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's

7

governing body" as causing him harm. That is, while he presents a list of generalized grievances, he makes no attempt to demonstrate that any of the jail conditions he mentions were the result of "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."

As to an unofficial custom, plaintiff has not established the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" Jefferson County employees, much less that Jefferson County officials were deliberately indifferent to or tacitly authorized such misconduct. To the contrary, plaintiff's facts amount to a vague listing of perceived problems at the Jefferson County Jail, but provide no support for the contention that plaintiff's constitutional rights were violated, and certainly does not demonstrate a pattern of unconstitutional acts.

Likewise, plaintiff has not demonstrated the existence of a failure to train or supervise because he has not alleged a "pattern of similar constitutional violations by untrained employees." Rather, as discussed above, plaintiff's general complaints about the conditions of the Jefferson County Jail do not indicate a pattern of constitutional violations by employees of the county.

For the reasons discussed above, plaintiff has failed to allege facts showing that Jefferson County violated his constitutional rights due to a policy, custom, or failure to train. Thus, to the extent that Jefferson County can be substituted as a defendant for the Jefferson County Sheriff's Department, the claim against it must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

**B. Official Capacity Claims Against Jefferson County Jail Administrator and Jefferson County Sheriff**

Plaintiff has sued both the Jefferson County Jail Administrator and the Jefferson County Sheriff in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, both the Jefferson County Jail Administrator and Jefferson County Sheriff are alleged to be employed by Jefferson County. As such, the official capacity claims against them are actually claims against Jefferson County itself, which is their employer. However, as discussed above, plaintiff has failed to state a municipal liability claim against Jefferson County. *See Marsh*, 902 F.3d at 751 (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Therefore, the official capacity claims against the Jefferson County Jail Administrator and Sheriff must be dismissed.

**C. Individual Capacity Claims Against Jefferson County Jail Administrator**

Plaintiff has sued the Jefferson County Jail Administrator in an individual capacity. Liability in a § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017).

In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

Here, plaintiff has presented no facts showing a causal connection between any action taken by the Jail Administrator, and the deprivation of one of plaintiff's constitutional rights. While plaintiff has listed a series of complaints about the Jefferson County Jail, the allegations are generalized, vague, and do not show that plaintiff was personally harmed. Moreover, even if it is assumed that plaintiff's rights were violated, he provides no indication that the Jail Administrator was personally responsible for the alleged deprivation. In other words, plaintiff appears to assume that the Jail Administrator's supervisory position makes him or her liable. However, there are no facts that actually establish the Jail Administrator's responsibility for the grievances plaintiff lists, or facts showing that he or she failed to act to correct a constitutionally violative situation.

Furthermore, the Court notes that the Jail Administrator is not mentioned whatsoever in the "Statement of Claim," but only appears when named as a defendant. Simply listing an individual as a defendant is not enough to assert their responsibility. *See Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (agreeing with district court dismissal of two defendants who were named as defendants in the complaint, but who had no factual allegations made against them); and

*Krych v. Hvass*, 83 Fed. Appx. 854, 855 (8ᵗʰ Cir. 2003) (agreeing with district court dismissal of defendants who were merely listed in his complaint, and who were not alleged to have been personally involved in the constitutional violations). As such, for these reasons, the individual capacity claim against the Jefferson County Jail Administrator must be dismissed.

**D.  Individual Capacity Claim Against Jefferson County Sheriff**

The Court notes that plaintiff has not sued the Jefferson County Sheriff in an individual capacity. However, even if he had, the claim would be subject to dismissal for the same reasons as discussed above with regard to the Jefferson County Jail Administrator. That is, plaintiff's conclusory assertions in his "Statement of Claim" do not demonstrate that his constitutional rights were violated. Even if they did, plaintiff has not shown that the Jefferson County Sheriff was personally responsible for any such violation, whether by action or inaction. Thus, even if the Jefferson County Sheriff had been sued in an individual capacity, the claim would be subject to dismissal.

**E.  Religion Claims**

Plaintiff's claims regarding religion fail to state a First Amendment violation. Under the Free Exercise Clause of the First Amendment, a plaintiff must first raise a question of fact regarding whether the correctional facility has placed a substantial burden on his ability to practice his religion. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8ᵗʰ Cir. 2008). *See also Weir v. Nix*, 114 F.3d 817, 820 (8ᵗʰ Cir. 1997) (stating that "[a]s an initial matter, a person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief"). "To constitute a substantial burden, the government policy or actions must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must

meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Murphy v. Missouri Dep't of Corrs.*, 372 F.3d 979, 988 (8th Cir. 2004).

Here, plaintiff confusingly complains about religious content on television, references "religious diets" without any further explanation, and asserts that there should be "services for every religion…and Bibles and stuff." None of this is sufficient to raise a question of fact about plaintiff's ability to practice his religion. Quite to the contrary, plaintiff does not provide his religious preference, much less provide any indication that he was constrained from "expression that manifests some central tenet" of his beliefs, or that his ability to express his faith was curtailed, or that he was denied "reasonable opportunities to engage in those activities that are fundamental" to his religion. For these reasons, plaintiff's religion claims must be dismissed.

### F. Nutrition Claims

Plaintiff's allegations regarding the food at the Jefferson County Jail fail to state a constitutional violation. Pursuant to the Eighth Amendment, inmates have a right to nutritionally adequate food.[3] *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). *See also Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) ("One constitutional protection retained by the prisoner is the right to an adequate diet"). While control of the diet is within the discretion of corrections officials, the diet must be adequate. *Divers v. Dep't of Corrs.*, 921 F.2d 191, 194 (8th Cir. 1990). A plaintiff can demonstrate that his right to an adequate diet was violated by evidence "that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health,

---

[3] The Court notes that plaintiff is currently a convicted and sentenced state prisoner, and thus protected by the Eighth Amendment. It is not clear whether, at the time he was in Jefferson County Jail, he was actually a pretrial detainee. If he was a pretrial detainee, his claims would be covered by the Fourteenth Amendment. Nevertheless, the Court notes that while the Eighth Amendment does not apply to pretrial detainees, "the Due Process Clause of the Fourteenth Amendment imposes analogous duties on jailers to care for detainees." *Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010).

or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016). *See also Obama v. Burl*, 477 Fed. Appx. 409, 412 (8th Cir. 2012) (stating that plaintiff's allegations regarding constant hunger, small food portions, and weight loss were sufficient for purposes of preservice review); and *Davis v. State of Missouri*, 389 Fed. Appx. 579, 579 (8th Cir. 2010) (stating that allegations that plaintiff lost nineteen pounds during eight-month stay in jail due to insufficient food, and that he was always sick and lacking energy, were sufficient to survive preservice dismissal).

Here, plaintiff states only that inmates are supposed "to have 3 hot meals," that he is a "veggie and all they give [him] is beans," and that he cannot "do" beans because of his digestive system. This is not sufficient to demonstrate inadequate nutrition. While plaintiff implies that he is not receiving three "hot meals" a day, and that he cannot eat the beans that he is given, he provides no facts to establish that he is receiving nutritionally inadequate food, or that the food is prepared in a manner presenting an immediate danger to his health. Plaintiff also fails to present any facts tending to show that his health suffered as a result of the food, either through weight loss, constant hunger, or other illness. Therefore, his nutrition claims must be dismissed.

### G. Medical Claims

Plaintiff's complaints regarding the medical care at the Jefferson County Jail fail to state a deliberate indifference claim. Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration.[4] *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show

---

[4] Even if plaintiff was a pretrial detainee, his claims would be analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006). *See also Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (stating that a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment).

that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Here, plaintiff appears to complain about the cost of medical care at the Jefferson County Jail, and asserts that there should be "full time medical staff." At no point, however, does plaintiff present any facts demonstrating that he has an objectively serious medical need. Likewise, he has not presented any facts establishing that jail officials were deliberately indifferent to that need. Though plaintiff contends that full time medical staff should be available, there is no indication

14

that a lack of medical staff created a situation in which plaintiff was denied essential care. Thus, plaintiff's medical claims must be dismissed.

### H.  Conditions of Confinement Claims

In his complaint, plaintiff lists a number of objectionable conditions of confinement. The Court notes that while plaintiff is currently a convicted and sentenced state prisoner, it is unclear whether he was actually a pretrial detainee at the time these alleged events occurred in the Jefferson County Jail. Assuming that plaintiff was a pretrial detainee, he could not be subjected to "conditions and restrictions" that amount to punishment "or otherwise violate the Constitution." *See Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979).

In determining whether pretrial detention is unconstitutionally punitive, the United States Court of Appeals for the Eighth Circuit has applied the deliberate indifference standard. *Owens*, 328 F.3d at 1027. *See also Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) ("To succeed on a claim under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee…must show the defendant official was deliberately indifferent to his rights"). In particular, the Eighth Circuit has explained that this standard is applicable when "the governmental duty to protect at issue…is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and well-being." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006). To that end, the Eighth Circuit has held "that deliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety." *Id*. at 345.

Here, plaintiff lists a number of complaints with regard to the conditions at the Jefferson County Jail. As to his assertion that there are no sheets or pillows, plaintiff has not provided any facts as to the length of time he went without sheets or pillows, or what the actual sleeping

arrangements were. More than that, he has not presented any facts alleging that he was harmed. *See Brakeall v. Stanwick-Klemik*, 2020 WL 1180727, at *8 (D. S.D. 2020) (stating that in the Eighth Amendment context, most "courts have held that an uncomfortable mattress that does not cause serious harm will not amount to a violation"). Likewise, plaintiff's contention that the "way [they] wash laundry is not right and inhuman" fails to show that his safety and well-being was at risk.

With regard to plaintiff's allegation that it was "freezing all the time," plaintiff provides no facts regarding the severity of the cold, the length of time he was exposed to the cold, and how the cold amounted to deliberate indifference to his safety. *See Johnson v. Gober*, 2020 WL 4032419, at *2 (E.D. Ark. 2020) (explaining that in Eighth Amendment context, "prisoners [have] the right to adequate shelter and protection from *extreme* cold, and courts examine allegations of the severity of the cold and the length of time the prisoner is exposed to it") (emphasis in original). Finally, plaintiff's statement that inmates are stacked "like they are…fish in a freezer" is too vague to establish a constitutional violation. That is, plaintiff appears to be alleging an overcrowding claim, but provides no facts to establish that the jail was overcrowded, or that it caused harm to plaintiff. For all these reasons, plaintiff's conditions of confinement claims must be dismissed.

## I.  Motion to Appoint Counsel

Plaintiff has moved for the appointment of counsel. (Docket No. 1 at 2). The motion will be denied as moot as this case is being dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis is **GRANTED**.

16

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.00 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 19th day of March, 2021.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE

17